**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION**

| | |
|---|---|
| **ROBERT W. CLAYBROOK and MARJORIE K. CLAYBROOK,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | CIVIL ACTION NO. 3:04cv0045-T (WO) |
| **CENTRAL UNITED LIFE INSURANCE COMPANY,** ) ) ) | |
| Defendant. ) | |

**OPINION**

In this diversity-of-citizenship lawsuit, 28 U.S.C.A. § 1332, plaintiffs Robert W. Claybrook and Marjorie K. Claybrook sued defendant Central United Life Insurance Company alleging Central United failed to pay, pursuant to a cancer-treatment insurance policy, supplemental benefits equal to the "actual charges" for Ms. Claybrook's chemotherapy. The Claybrooks assert state-law claims for breach of contract, fraud, bad faith, negligence and wanton misconduct.

This case is now before the court on Central United's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine

issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

## II.  FACTUAL BACKGROUND

The facts of this case are relatively straightforward and undisputed.  In May 1991, Commonwealth National Life Insurance Company issued a supplemental-benefits insurance policy to the Claybrooks, in the event that one or both of them would be diagnosed with cancer.[1]  Commonwealth

---

1.  The parties do not dispute that, as an assignee, (continued...)

subsequently assigned its contractual rights and obligations under the Claybrooks' policy to the Central United. The policy does not subsidize cancer treatment per se but, instead, pays limited supplemental benefits directly to the policyholder. Under the terms of the policy, the amount of supplemental benefits that the beneficiary receives is determined by and equal to the amount of "actual charges" that the patient incurs for cancer treatment.[2] Thus, if the patient's other insurance covers the treatment, the patient recovers, in effect, twice the cost of the treatment, and the patient can thus essentially pocket the money he or she receives from Central United.

Due to Medicare regulations, health care providers use a sliding-scale fee when charging patients for medical services rendered: Medicare patients are charged less for

---

1. (...continued)
Central United now stands in the shoes of Commonwealth and, thus, assumes all obligations to perform on the Claybrooks' cancer-treatment policy.

2. Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 38), limited benefit cancer treatment policy (Exhibit A, p. 4).

4

medical treatments than non-Medicare patients. The Claybrooks are Medicare recipients, which means they are charged a lower fee for medical services.

In August 2002, Ms. Claybrook was diagnosed with ovarian cancer. From September 2002 to January 2003, she underwent six chemotherapy treatments. The "actual charges" for those treatments form the basis of this lawsuit.

Prior to February 1, 2003, Central United policyholders seeking supplemental benefits would file a claim and attach thereto a statement reflecting the standard fees the physician charges for his or her services. The Claybrooks received some supplemental benefits from Central United using this old claims-processing procedure.

To save money, Central United changed its claims-processing procedure, effective February 1, 2003. Under the new procedure, claimants were required to submit documents reflecting the actual amount that the physician agreed to and accepted as full payment for medical services rendered to the patient. By requiring additional documentation

before paying supplemental benefits, Central United essentially paid Medicare patients benefits equal to the amount that Medicare approved and the doctor actually agreed to accept as payment. As such, as of February 2003, the Claybrooks received supplemental benefits at the lower Medicare rate, as opposed to the standard non-Medicare rate which they had previously received.

The relevant dates of service and charges for Ms. Claybrook's medical care are as follows:

| Dates of service | Standard fee for non-Medicare patients | Fee for Ms. Claybrook, as a Medicare patient |
|---|---|---|
| 09/11/02 | $ 4,462 | $ 2,714.02 |
| 10/02/02 | 4,462 | 2,812.98 |
| 10/23/02 | 4,462 | 2,812.98 |
| 11/21/02 | 4,462 | 2,812.98 |
| 12/11/02 | 4,325 | 2,677.01 |
| 01/02/03 | 4,188 | 2,521.94 |
| Totals | $ 26,361 | $ 16,351.91 |

Notably, the parties stipulate to the following facts: to date, Central United has paid Robert Claybrook

$ 16,351.91 in supplemental benefits for Ms. Claybrook's chemotherapy treatments; this amount is equal to the entire amount the medical provider accepted as full and final payment for chemotherapy services rendered to her as a Medicare patient; furthermore, because the Central United policy is for supplemental benefits only and not actual medical expenses, the Claybrooks have not sustained any out-of-pocket costs as a result of the company's February 2003 modification to its claims-processing procedure.

Despite these stipulated facts, the Claybrooks contend that they are entitled to supplemental benefits in the sum of $ 26,361, which is equal to the amount they would have received if Ms. Claybrook were not a Medicare recipient. As such, they seek contract damages totaling $ 10,009.09, which is the excess amount Central United would have paid in chemotherapy benefits before it modified its claims-processing procedure in February 2003.

### III.  DISCUSSION

As stated, the Claybrooks assert state-law claims for breach of contract, fraud, bad faith, negligence and wanton misconduct.  Because the Claybooks' breach-of-contract claim is the cornerstone of their other claims as well, the court will discuss that claim first.

The Claybrooks argue that, by changing its claims-processing procedure, Central United breached its contractual duty to pay them benefits equal to "actual charges" under the cancer-treatment policy.  In its summary-judgment motion, Central United contends that there was no contractual breach because "actual charges" are the amounts that healthcare providers agreed to accept as full payment for rendering medical services to Medicare patients such as Ms. Claybrook.  The court's analysis will proceeds as follows: first, the court will determine whether the agreement of the parties is ambiguous; the court will then determine whether, after it modified its claims-processing procedure in February 2003, Central United breached its

contractual duty to pay the plaintiffs supplemental benefits for Ms. Claybrook's cancer treatments.

### A.

The Claybrooks may survive summary judgment if they can demonstrate that a disputed term in the supplemental-benefits agreement is ambiguous.  Where "[t]he terms of the written contract ... are clear and unambiguous, ... the determination of its meaning is a matter of law for the court to decide, unaided by extrinsic evidence." Babcock v. Smith, 234 So.2d 573, 577 (Ala. 1970).  Under Alabama law, a contract is ambiguous "when a term is reasonably susceptible to more than one interpretation."  Ex parte Harris, 837 So.2d 283, 290 (Ala. 2002).  "Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.  Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." Young v. Pimperl, 882 So.2d 828, 831 (Ala. 2003).  When

9

dispute arises, the legal effect of ambiguous terms are to be construed against the insurer and in favor of the policyholder. Continental Ins. Co. v. Roberts, 410 F.3d 1331, 1333 (11th Cir. 2005).

In this case, the gravamen of the dispute is whether the policy is ambiguous as to what constitutes "actual charges" for determining the amount of supplemental benefits that the policyholder should receive. To determine what constitutes actual charges, the court begins by looking within the four corners of the policy itself. Kershaw v. Kershaw, 848 So.2d 942, 955 (Ala. 2002) (when deciphering the intent and meaning of a contract, courts should "not look beyond the four corners of an instrument unless the instrument contains latent ambiguities"). The full-text of the chemotherapy provision in the supplemental-benefits policy is as follows:

> "Chemotherapy benefit. We will pay actual charges for: chemical substances, including chemicals used in immunotherapy and hormonal therapy, and their administration for purposes of modification or destruction of abnormal tissue. Such drugs and chemical substances must be approved by the United States Food

>and Drug Administration and administered by or under the direct supervision of a physician.  This benefit is not payable for physical examinations, checkups, treatment planning, diagnostic x-rays or other laboratory tests related to the therapy."[3]

In other provisions of the policy, the term "actual charges" is  characterized as "actual charges <u>made to you</u> [the insured] for all hospital, medical and surgical care rendered."[4]  <u>Attorneys Ins. Mut. of Ala. v. Smith, Blocker & Lowther, P.C.</u>, 703 So.2d 866, 870 (Ala. 1996) ("Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.").  But more importantly, in everyday and plain language, the term "actual" means "real," "existing," not "potential" or "possible."  <u>The American</u>

---

   3.   <u>Id</u>.

   4.   <u>Id</u>. (emphasis added).

11

Heritage® Dictionary of the English Language, Fourth Edition, Copyright © 2000 by Houghton Mifflin Company.

Having reviewed the chemotherapy-benefit provision and the policy as a whole, the court finds that the term "actual charges" is unambiguous when given its ordinary and plain meaning in the context of the policy.  Actual charges in this case are charges actually billed to the patient (or their insurance provider) when medical services are rendered; such actual charges may be higher or lower depending upon whether the patient is a Medicare recipient.  "If the policy is not ambiguous, the insurance contract must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties."  Thorn v. Am. States Ins. Co., 266 F. Supp. 2d 1346, 1349 (M.D. Ala. 2002) (Thompson J.);  see also Jones v. Jones, 722 So.2d 768 (Ala. Civ. App. 1998).

To be sure, Central United paid benefits of more than the actual charges for a period of time.  But Alabama law is clear that, "Any subsequent conduct of the parties in

supposed observance of [a contract's] terms, cannot be considered by us as aids in its construction." Babcock v. Smith, 234 So.2d 573, 577 (Ala. 1970).

B.

Having determined that the contract in this case is unambiguous, to the extent that Central United was obligated to pay the Claybrooks supplemental benefits in the amount equal to that actually charged for Ms. Claybrook's chemotherapy, the court now turns to whether Central United breached this contractual obligation.

To establish a prima-facie case for breach of contract, the Claybrooks must demonstrate: "(1) the existence of a valid contract binding the parties in the action, (2) [their] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Winkleblack v. Murphy, 811 So.2d 521, 529 (Ala. 2001).

The Claybrooks' case fails with respect to the third element because they have not produced adequate evidence of Central United's nonperformance.  The Claybrooks do not

contend that Central United failed to pay benefits equal to the Medicare-adjusted fee; indeed, the Claybrooks stipulate that Central United remitted to them benefits equal to what Mrs. Claybrook's chemotherapy providers accepted in full and final payment for their services to her as a Medicare patient. Rather, the Claybrooks' nonperformance argument is based on the erroneous belief that the contract entitles them to supplemental benefits at a rate they would be charged if they were not Medicare recipients. The Claybrooks, however, have failed to identify some term in the policy that requires the type of performance that they seek.

   The court concludes that there was no contractual breach in this case because Central United fully performed its contractual obligation to pay the plaintiffs supplemental benefits equal to the actual charges for Ms. Claybrook's cancer treatment; furthermore, the defendant was under no contractual duty to pay the Claybrooks benefits exceeding what was actually charged to them for such treatments.

IV.  CONCLUSION

Because the Claybooks' evidence is insufficient to create a triable issue of fact, summary judgment will be entered on the Claybrooks' breach-of-contract claim. In addition, because there is insufficient evidence of breach, summary judgment will be entered on the Claybrooks' remaining state-law claims for fraud, bad faith, negligence, and wanton misconduct.

DONE, this the 31st day of August, 2005.


 /s/ Myron H. Thompson
 UNITED STATES DISTRICT JUDGE